UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ROBIN HASTON, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:16-cv-615-WTL-DML |
| | ) |
| REPUBLIC OF CUBA, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON MOTION FOR DEFAULT JUDGMENT

This cause is before the Court on the Plaintiff's motion for default judgment (Dkt. No. 16). For the reasons set forth below, the motion must be, and is, **DENIED**, and this case must be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### I. FACTUAL BACKGROUND

The facts as alleged by Plaintiff Robin Haston, which are taken as true for the purposes of this ruling, are as follow.

On March 31, 2015, Haston was vacationing at the Holiday Inn Sun Spree resort in Montego Bay, Jamaica with her boyfriend (now husband) Vic Hutchings. The Cuban National Soccer Team, which was in Jamaica for a soccer game against a Jamaican team, was staying at the resort at the same time. While Haston was using a public women's restroom at the resort, four members of the Cuban National Soccer Team—Yoandir Puga Estevez, Tomas Cruz Rodriguez, Yordan Santa Cruz Vora, and Jorge Luis Clavelo—entered the restroom. Estevez, Rodriguez, and Vora took turns raping Haston, who was in a locked stall. When Hutchings grew concerned that Haston had not returned from the restroom and went to check on her, he heard her

screaming. He entered the restroom and physically fought off the attackers, who were captured by a video surveillance camera fleeing down a stairwell.

Haston immediately reported the attack to the hotel, and local authorities, the United States Embassy, and medical personnel were summoned. Haston was shown a photo array and identified her attackers. Possible DNA evidence was obtained from Haston and Hutchings and from the crime scene. Estevez, Rodriguez, and Vora were arrested. Each of the men refused to provide DNA samples. Agents of the Cuban government intervened and compromised the investigation. The men were released from custody and allowed to return to Cuba on April 9, 2015. Cuba has refused to cooperate in the criminal investigation.

Haston filed this action against the Republic of Cuba, seeking to hold Cuba liable for the actions of her attackers. She obtained a clerk's entry of default against Cuba, which has been served but has failed to appear in this case. She now seeks entry of default judgment against Cuba.[1]

## II. APPLICABLE STATUTORY REQUIREMENTS

Pursuant to the Foreign Sovereign Immunities Act ("FSIA"), foreign states are immune from the jurisdiction of U.S. courts except as provided in certain provisions of the FSIA. Haston alleges that this case falls under the FSIA's terrorism exception, which is established in 28 U.S.C. § 1605A. The terrorist exception permits a U.S. court to hear a claim for money damages against a foreign state when certain circumstances are present.[2]

---

[1] Unlike a typical case, liability was not established by the entry of default; rather, the FSIA requires a plaintiff to "establish[] [her] claim or right to relief by evidence satisfactory to the court" before she is entitled to default judgment. 28 U.S.C. § 1608(e).

[2] The issue of the applicability of the terrorist exception is not waivable and must be addressed by the Court, as it determines whether the Court has subject matter jurisdiction over this case. *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993) ("[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a

First, the claim must seek damages for "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). Here, Haston alleges, and the Court will assume for purposes of this ruling, that the attack she endured was an "act of torture" as that term is used in section 1605A,[3] thus satisfying this requirement.

Second, the claim must be brought against a foreign state that was "designated as a state sponsor of terrorism at the time the [act of torture] occurred, or was so designated as a result of such act, and . . . either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section." 28 U.S.C. § 1605A(a)(2)(A)(i)(I). This provision is ambiguous. Cuba was designated a state sponsor of terror at the time of the attack, but it is unclear whether that fact alone is sufficient—which is what Haston assumes—or whether one of the conditions after "and" must also be satisfied. If the latter, Haston's claim is untimely, because Cuba was not designated at the time Haston filed her claim or at any time during the six months prior to that date; its designation was removed effective May 29, 2015, and Haston filed this case on March 18, 2016, more than six months later. For purposes of this ruling, the Court will assume that Haston's reading of the statute is

---

federal court lacks subject-matter jurisdiction over a claim against a foreign state."). Therefore, "even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under [the FSIA]." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 493 n.20 (1983).

[3]28 U.S.C. § 1605A(h)(7) provides that, for purposes of the Act, the term "torture" has the meaning given to that term in section 3 of the Torture Victim Protection Act of 1991. That statute, which is found in the note following 28 U.S.C. § 1350, defines torture as including, as relevant to this case, "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering . . . is intentionally inflicted on that individual . . . for any reason based on discrimination of any kind." Haston argues that "the gang rape and assault was discriminatory in that the perpetrators selected Ms. Haston to attack based upon her female gender and nationality, as it was apparent from looking at and listening to Ms. Haston that she was an English-speaking American."

correct. *But see* 1 Litigation of International Disputes in U.S. Courts § 3:35 (assuming the opposite).

Finally, to fall under the terrorism exception, the claim must arise out of an action that was "engaged in by an official, employee, or agent of [a] foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1). The Court has given Haston two opportunities to brief the issue of whether the facts in this case as alleged by Haston support a finding that her attackers were acting within the scope of their employment when the attack occurred. *See* Dkt. Nos. 8 and 15 (Court's entries); Dkt. Nos. 11 and 17 (Haston's briefs). Having considered Haston's briefs, the Court, as discussed below, determines that they do not.

### III. SCOPE OF EMPLOYMENT

Under Indiana law,[4] an employee is acting within the scope of his or her employment when the employee's conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quoting *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 453 (Ind. 2000)). The Indiana Supreme Court has explained that "[a]n act is incidental to authorized conduct when it 'is subordinate to or pertinent to an act which the servant is employed to perform,' or when it is done 'to an appreciable extent, to further his employer's business.'" *Bushong*, 790 N.E.2d at 473 (citations omitted); *see also Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997) ("The critical inquiry is . . . whether the employee is in the service of the employer.").

---

[4]Given that Haston argues that Indiana law applies to the scope of employment issue in this case, the Court sees no reason not to apply Indiana law. *Cf. McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

4

By contrast, the Indiana Supreme Court has observed that "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Barnett v. Clark,* 889 N.E.2d 281, 284 (Ind. 2008) (emphasis omitted) (quoting Restatement (Third) of Agency § 7.07(2) (Am. Law Inst. 2006)). Stated differently, "[a]cts done 'on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed' are not 'in the service of the employer' and are thus outside the scope of employment." *Warner Trucking*, 686 N.E.2d at 105 (quoting *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.,* 547 N.E.2d 244, 247 (Ind. 1989)). Furthermore, an employee's acts may fall outside the scope of his or her employment, "even though the particular injury could not have occurred without the facilities afforded by the relation of the servant to [the] master." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 612 (7th Cir. 2008) (quoting *Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind. Ct. App. 1984)).

Nevertheless, under Indiana law, an employee's tortious or criminal acts may still be considered within the scope of employment. *See, e.g.*, *Stropes,* 547 N.E.2d at 250 (nurse aide's sexual assault of disabled patient); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 273 (Ind. Ct. App. 2000) (equipment manager's sexual molestation of youth baseball participants); *Gomez*, 462 N.E.2d at 223-27 (private security officer's conversion of personal property); *Tippecanoe Beverages v. S.A. El Aguila Brewing Co.*, 833 F.2d 633 (7th Cir. 1987) (agent's conversion of payment from wholesaler). The Indiana Supreme Court has found such wrongful acts to fall within the scope of employment despite the fact that the acts were "predominantly motivated by an intention to benefit the employee himself," *Barnett*, 880 N.E.2d at 284 (quoting *Stropes*, 547 N.E.2d at 247), because the acts "originated in activities so closely associated with

5

the employment relationship as to fall within its scope." *Bushong*, 790 N.E.2d at 473 (quoting *Stropes*, 547 N.E.2d at 247). Thus, Indiana courts have found that some sexual offenses committed by employees may fall within the scope of employment. *See Stropes,* 547 N.E.2d at 249-50; *Southport Little League*, 734 N.E.2d at 273. The Indiana Supreme Court has stated:

> A blanket rule holding all sexual attacks outside the scope of employment as a matter of law because they satisfy the perpetrators' personal desires would draw an unprincipled distinction between such assaults and other types of crimes which employees may commit in response to other personal motivations, such as anger or financial pressures.

*Stropes*, 547 N.E.2d at 249. Consequently, the issue of scope of employment "does not turn on the type of act committed[,]" but rather on "how the employment relates to the context in which the commission of the wrongful act arose." *Id.* ("The fact that this was a sexual assault is not per se determinative of the scope of employment question.").

However, as noted by the Seventh Circuit, Indiana courts have determined that the question of whether an employee's sexual misconduct comes within the scope of employment is "a genuine issue of fact only in cases where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting." *Hansen*, 551 F.3d at 612. For example, in *Stropes*, the Indiana Supreme Court reversed summary judgment for a children's center and held that a jury could determine that a nurse's aide employed by the center was acting within the scope of his employment when he sexually assaulted a mentally disabled fourteen-year-old resident of the center. *Id.* at 612-13 (citing *Stropes*, 547 N.E.2d at 250). The aide's responsibilities involved physical contact with residents, including the victim, when he was engaged in feeding, bathing, and changing bedding and clothes. *Stropes*, 547 N.E.2d at 249. These acts were fully authorized by the center and "unquestionably within the scope of his employment." *Id.* While changing the victim's bed

6

sheets, the aide sexually assaulted him and then finished changing the bed and the victim's clothes. *Id.* The court reasoned that because the aide "acted to an appreciable extent to further his [employer's] business" and his acts were, "at least for a time, authorized by his employer . . . and motivated to an extent by [his employer's] interests," the facts could be construed to show that the aide's criminal acts occurred within his scope of employment. *Id.* at 250 (citations omitted). The *Stropes* court concluded that the plaintiff had demonstrated that "[t]he nature of the [aide's] acts were, at the very least, sufficiently associated with [his] authorized duties" to create a material issue of fact and thus avoid summary judgment. *Id.* Likewise, in *Southport Little League*, the Indiana Court of Appeals affirmed a jury verdict in favor of the plaintiff because the facts supported the inference that an equipment manager's sexual molestation of youth baseball participants was sufficiently associated with his responsibilities, authorized by the league, so as to fall within his scope of employment. 734 N.E.2d 261 at 269-70. The equipment manager's authorized duties involved some physical contact with youth participants when measuring and fitting baseball uniforms. *Id.*

In contrast, when an employee's authorized responsibilities do not involve physical contact with the victim, Indiana courts have refused to find an employee's sexual offenses within his or her scope of employment. *Hansen*, 551 F.3d at 613; s*ee also Barnett,* 889 N.E.2d at 286; *Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 702 (Ind. Ct. App.), *abrogated on other grounds by State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008); *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996). For instance, in *Konkle*, the Indiana Court of Appeals affirmed summary judgment and held that a minister's acts of child molestation did not occur within the scope of his employment. 672 N.E.2d at 457. The *Konkle* court reasoned that these acts were outside the scope because there was no evidence that at the time of the sexual

7

misconduct the minister was engaging in authorized acts nor were the acts similar to his duties as a minister, even though many of the acts occurred in the church's building. *Id.*

Analyzing Indiana law, the Seventh Circuit has stated that the critical inquiry in sexual misconduct cases "is whether the employee's wrongful acts are sufficiently associated with the nature of that employee's duties and authority." *Hansen*, 551 F.3d at 614 (quoting *Barnett,* 889 N.E.2d at 285). Specifically, "a court should examine the nature of the employee's authorized duties and the extent to which they involve physical contact or duties similar to those of the nurse's aide in *Stropes*." *Id.* In *Barnett*, the Indiana Supreme Court affirmed summary judgment for the defendant trustee because the wrongful acts of the trustee's employee were not sufficiently associated with his authorized duties to come within the scope of his employment. 889 N.E.2d at 286. The trustee's employee had sexually assaulted an applicant seeking public assistance after advising her that she would have to do some bookwork for him to receive assistance. *Id.* at 283. The *Barnett* court elaborated that the employee's actions did not involve authorized physical contact by the employer trustee, were not incidental to his authorized duties, did not further his employer's business, and were not motivated to any extent by his employer's interests. *Id.* at 286. Similarly, applying Indiana law, the Seventh Circuit in *Hansen* held that a band instructor's sexual misconduct against a student did not fall within the scope of his employment because it was not sufficiently associated with his duties as a band instructor and his authorized duties did not involve physical contact with students. 551 F.3d at 614. The *Hansen* court affirmed summary judgment for the defendant school district despite the fact that the instructor's position provided him with access to students and to the practice rooms in which the acts of sexual misconduct were committed. *Id.* at 614-15.

In the present case, Haston argues that her attackers, as employees of the Republic of Cuba, were acting within the scope of their employment when they assaulted her. She primarily relies on the Indiana Supreme Court's decision in *Stropes* to support her argument. However, *Stropes* clearly is distinguishable. In *Stropes*, the employee's authorized responsibilities involved physical contact with the victim, such as bathing and clothing him. Here, the attacker's duties as soccer players did not include any contact with Haston.

Haston concedes that her attackers' employment duties did not include those enumerated by the *Stropes* court. However, she argues that their misconduct fell within the scope of their employment because the Republic of Cuba directed them to travel to Jamaica, provided material support for their travel and accommodations, and, generally, exerted control over them. However, as noted above, under Indiana law, although "'the particular injury could not have occurred without the facilities afforded by the relation of the servant to [the] master,'" that is not sufficient to bring the attacks within the scope of the attackers' employment. *Hansen*, 551 F.3d at 614 (quoting *Gomez,* 462 N.E.2d at 223); *see also Lafayette Sch. Corp.*, 846 N.E.2d at 702 (declining to find teacher's sexual molestation of student within scope of employment because it was not authorized nor incidental to service to school despite teacher's use of school equipment and facilities to initiate inappropriate relationship). The fact that the attackers' presence at the resort, and therefore their access to Haston, was because of their employment is simply not sufficient to hold the Republic of Cuba liable for actions that bore no relationship to their job duties. Accordingly, the facts alleged by Haston cannot support a finding that her attackers were acting within the scope of their employment as soccer players when they assaulted her.

## IV. CONCLUSION

For the reasons set forth above, the Court must conclude that Haston is unable to "establish[] [her] claim or right to relief by evidence satisfactory to the court" as required by 28 U.S.C. § 1608(e), and therefore she is not entitled to default judgment against the Republic of Cuba. Rather, this case must be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, because the only asserted basis for this Court's jurisdiction over the Republic of Cuba—the terrorism exception to the FSIA set forth in 28 U.S.C. § 1605A—cannot be satisfied given the facts of this case.

SO ORDERED: 11/9/17

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification